UNITED STATES BANKRUPTCY COURT           FOR PUBLICATION

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:

SAINT VINCENTS CATHOLIC MEDICAL
CENTERS OF NEW YORK d/b/a SAINT VINCENT
CATHOLIC MEDICAL CENTERS, *et al.*,

               Debtors.

Chapter 11

Case No. 05 B 14945 (ASH)
(Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**A P P E A R A N C E S :**

**CADWALADER, WICKERSHAM & TAFT LLP**
**Attorneys for Post-Effective Date Debtors**
**By: Deryck A. Palmer, Esq.**
    **Andrew M. Troop, Esq.**
    **Christopher R. Mirick, Esq.**
    **W. Joshua Brant, Esq.**
**One World Financial Center**
**New York, NY 10281**

**COOLEY GODWARD KRONISH LLP**
**Attorneys for the MedMal Trust Monitor**
**By: Richard S. Kanowitz, Esq.**
**1114 Avenue of the Americas**
**New York, NY 10036**

**HOWARD M. FILE, ESQ., P.C.**
**Attorneys for Jordana Goodman and Cory Goodman**
**By:  Martin Rubenstein, Esq.**
**260 Christopher Lane**
**Suite 102**
**Staten Island, NY 10314**

**ADLAI S. HARDIN, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

## DECISION DENYING DEBTORS' MOTION TO ESTABLISH PROCEDURES

        The Post-Effective Date Debtors ("Debtors") have moved for an order "To Establish Procedures for Determining Covered Person Status for Certain Defendants, and to Enforce the Automatic Stay and Plan Injunction with Respect to such Defendants" (the "Motion").  The ultimate purpose of the

Motion is to establish procedures to bar pre-petition medical malpractice claims or "MedMal Claims"[1] asserted against any "Covered Person"[2]. The Motion and, it appears, arguments which have been asserted in state courts by the Debtors and/or Covered Persons, proceed from the premise that "holders of Non-Timely Prepetition MedMal Claims are permanently enjoined by the Plan Injunction and the Stay from asserting such claims against Covered Persons" (Motion at 6). The premise is predicated on the postulate that pre-petition MedMal Claims asserted **against Covered Persons** may be barred in whole or in part if the claimants did not file a timely claim **against the Debtors**.[3]

    I reject both the premise and the postulate on which it is based. Nothing in the Debtors' Plan, or the Bankruptcy Code, or any order of this Court enjoins or otherwise bars holders of MedMal Claims from suing Covered Persons. The concept of a "Non-Timely Prepetition MedMal Claim against a Covered Person" is oxymoronic in the context of the Debtors' bankruptcy proceedings because no provision of the Bankruptcy Code or the Debtors' Plan and no order of this Court established any deadline or bar date for the assertion of MedMal Claims against Covered Persons.

    This Decision is published to deny the Motion and to repudiate the premise and postulate on which the Motion is based, which have apparently been asserted by the Debtors against MedMal Claimants suing Covered Persons in other state or federal courts.

---

[1] As defined in Section 1.93 of the Debtors' Plan, "MedMal Claim means any prepetition Claim relating to medical malpractice (i) asserted or which can be asserted against SVCMC and/or SVCMC's insurers on account of or related to SVCMC's purported liability for an alleged act of medical malpractice or (ii) asserted or which can be asserted against any Covered Person with respect to or related to claims of alleged medical malpractice, in each case net of the proceeds of SVCMC's third party insurance available to pay the holder of such Claim."

[2] As defined in Section 1.42 of the Debtors' Plan, "Covered Person means any physician or employee of SVCMC to the extent that such physician or employee has a right of indemnification against or from SVCMC with respect to claims of alleged medical malpractice."

[3] The record before me does not reveal what, if any, MedMal Claimants affected by the Motion have been served with the Motion. Although the Motion may vitally affect the interests of all MedMal Claimants who have asserted MedMal Claims against Covered Persons but did not timely assert MedMal Claims against the Debtors, only one such Claimant in a state court lawsuit has objected to the Motion (on grounds not relevant to this ruling).

- 2 -

**Jurisdiction**

This Court has jurisdiction to decide this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the standing order of referral to bankruptcy judges signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2).

**Background**

The Debtors commenced these Chapter 11 cases on July 5, 2005 (the "Commencement Date"). On July 18, 2005 and May 17, 2006, respectively, the United States Trustee appointed an Official Committee of Creditors (the "Creditors' Committee") and an Official Committee for Tort Creditors (the "Tort Claimants' Committee").

By order dated January 25, 2006, this Court established March 30, 2006 as the deadline (the "Bar Date") for filing proofs of claim on debts and liabilities asserted **against the Debtors** that arose prior to the Commencement Date. However, it is significant for purposes of this Motion that Debtors did not seek and this Court did not order any bar date or deadline for the filing of pre-petition MedMal Claims against Covered Persons.

This Court entered an order confirming the Debtors' Plan on July 27, 2007 (the "Confirmation Order"). The Plan became effective on August 30, 2007. As asserted in the Motion, in accordance with the Plan "the Post-Effective Date Debtors established certain trusts (collectively, the 'MedMal Trusts') that are available to satisfy prepetition medical malpractice claims for which a proof of claim was timely filed in the Bankruptcy Cases, to the extent such claims are not satisfied by third parties or the Debtors' existing available medical malpractice insurance" (Motion at 4). Holders of MedMal Claims who timely filed claims against the Debtors on or before the March 30, 2006 Bar Date are entitled to litigate their claims to judgment in state or federal courts of competent jurisdiction and receive payments on their judgments from the MedMal Trusts.

The issue raised by the Motion concerns MedMal Claimants who did not timely file claims in the Debtors' bankruptcy on or before the Bar Date. Such Claimants, unless permitted to file a late claim by order of this Court, are barred from asserting their claims against the Debtors or the

Debtors' estates and are barred from any recovery from the MedMal Trusts. The only recourse for such Claimants is to assert their claims for medical malpractice against the responsible medical professionals — physicians, nurses — whether employed by the Debtors or not and, if successful, to recover their damages from whatever insurance may be available to the defendant professionals or from their personal assets. In such cases, the defendant professionals who have a right of indemnification against the Debtors fall within the definition of "Covered Person" under the Debtors' Plan. Since the Plan provides no bar date on Covered Persons' rights to indemnification from the Debtors, the Plan states that Covered Persons' rights to indemnification will be satisfied out of the MedMal Trusts.

It is the position of the Debtors and the MedMal Trust Monitor (which acts pursuant to the Plan on behalf of or as successor to the Tort Claimants' Committee) that the holders of MedMal Claims who did not timely file claims against the Debtors on or before the Bar Date (and are therefore barred from enforcing their claims against the Debtors or the MedMal Trust) are also barred under the terms of the Plan and the Confirmation Order from enforcing their medical malpractice claims against those professional defendants who fall within the definition of Covered Person, *i.e.*, Covered Persons who have the right of indemnification against the Debtors and against the MedMal Trusts. As shown in the Discussion below, the position of the Debtors and the MedMal Trust Monitor must be rejected because nothing in the Plan or Confirmation Order bars the enforcement of medical malpractice claims against Covered Persons, whether or not the claimants timely filed claims against the Debtors before the Bar Date.

### **Discussion**

Before turning to the Debtors' contentions, several observations will help to put the matter in perspective.

Covered Persons, be they physicians, nurses or other employees of the Debtors, are not themselves the Debtors — they are third parties. Claims against Covered Persons for medical malpractice or otherwise, arising before or after the Debtors' Commencement Date, were not affected by the automatic stay under Bankruptcy Code Section 362(a) in the Debtors' Bankruptcy Cases. In rare circum-

stances a debtor may obtain an order of a bankruptcy court after notice to affected parties and a hearing to stay suits against third parties to avoid material prejudice to the debtor or the debtor's property. But the Debtors in these Bankruptcy Cases never sought an order of this Court to stay medical malpractice claims against third parties such as the physicians, nurses or other employees of the Debtors.

Nothing in the Bankruptcy Code authorizes or permits a release or discharge of claims asserted against non-debtor third parties (*see* Section 524(e)), or an injunction barring claims against third parties seeking to impose liability for the third parties' own derelictions. In rare circumstances a debtor may, in connection with a plan of reorganization, seek a release of or an injunction (such as a "channeling injunction") against claims which may be asserted against a third party where the third party has made some affirmative contribution which is essential to the success of the reorganization and which will thereby benefit the putative plaintiff whose claim against the third party is to be released or enjoined. But the Debtors here have never sought a release of or injunction to restrain third-party claims against the Debtors' employees who may fall within the definition of Covered Person.

Nevertheless, the Debtors assert that the Plan and this Court's Confirmation Order should be construed so as to infer or imply a bar against MedMal Claims asserted against Covered Persons to the extent that such Claims would give rise to a right of indemnification on the part of the Covered Person against the Debtors (which under the Plan could be satisfied out of the MedMal Trusts).

As a final preliminary point, it is important to note that we are not here concerned with MedMal Claims asserted directly against the Debtors or the Debtors' estates or assets of the MedMal Trusts. This Court has repeatedly disallowed or expunged or enjoined such Claims where the Claims were not timely filed within the Bar Date. As noted above, the Motion is concerned only with medical malpractice claims asserted against the Debtors' professional employees. We turn now to the Debtors' contentions in support of this position.

The Debtors make the blanket statement that "(d) claimants were permanently enjoined from pursuing any Non-Timely Prepetition MedMal Claims or asserting such claims against . . . Covered Persons . . .," citing paragraphs 11, 39 and 41 of the Confirmation Order (Motion at 4). In fact, none of

these paragraphs in the Confirmation Order provides any support for this statement either expressly or by implication. Let us examine each of these paragraphs.[4]

**Paragraph 11** of the Confirmation Order entitled "Disputed Claims" concerns the treatment **under the Plan** of a "Disputed Claim." It provides that "no payment or distribution provided under the First Amended Plan shall be made on account of such [Disputed] Claim unless and until and only to the extent such Disputed Claim becomes an Allowed Claim." If a Disputed Claim becomes an Allowed Claim, it is to be paid in accordance with the Plan, and "[t]o the extent that a Disputed Claim is expunged or reduced, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed." It is unambiguously clear from these provisions that paragraph 11 is concerned solely with claims asserted against the Debtors or the Debtors' estates. The concept of a Disputed Claim which becomes an Allowed Claim with the right to a distribution in accordance with the Debtors' Plan, or which is "expunged or reduced" and therefore not entitled to "receive any distribution" under the Plan can only apply to claims asserted against the Debtors. Paragraph 11 simply has no application to a claim asserted by a MedMal claimant against a non-Debtor third party such as a physician or a nurse, whether the third party is within the definition of Covered Person or not.

**Paragraph 39** of the Confirmation Order entitled "Injunction" applies only to "Persons or entities who have held, hold, or may hold Claims against . . . any or all of the Debtors or other parties in interest" and states that such persons "are permanently enjoined . . . with respect to all Claims against . . . the Debtors" (emphasis in original). Paragraph 39 does not purport to apply to persons who hold claims against third parties such as physicians and nurses, and it does not enjoin any proceedings other than "with respect to all Claims against . . . the Debtors." Paragraph 39 does not purport to enjoin the prosecution or enforcement of any claims other than claims against the Debtors.

**Paragraph 41** (untitled) of the Confirmation Order applies only to "[t]he automatic stay imposed by section 362 of the Bankruptcy Code" and the injunction set forth in First Amended Plan

---

[4] Paragraphs 11, 39 and 41 of the Confirmation Order are set forth in full in the Appendix which follows at the foot of this Decision.

- 6 -

Sections 11.6(a) and (b) and paragraphs 35 and 36 of this Confirmation Order. Section 11.6(a) of the Plan is the predicate provision for paragraph 39 of the Confirmation Order, discussed immediately above. Section 11.6(b) of the Plan and paragraphs 35 and 36 of the Confirmation Order concern exculpation and release provisions having nothing to do with the Motion. Section 362 of the Bankruptcy Code imposes the automatic stay with respect to the Debtors or property of the Debtors, but the automatic stay has no application to claims asserted against non-debtor third parties such as physicians and nurses or their property whether or not such third parties fall within the definition of Covered Person. Thus, paragraph 41 of the Confirmation Order in no way enjoins claimants who asserted MedMal Claims against Covered Persons.

The Motion at paragraph 7 on page 5 quotes from language in Section 11.6(c) of the Plan, paragraph 41 of the Confirmation Order and Plan Sections 4.8(b), 4.9(b) and 4.10(b) which taken together provide in substance that holders of MedMal Claims which did not timely file proofs of claim "shall not be entitled to any recovery under the Plan or from any of the Debtors' insurers." That may be true but it is irrelevant because the MedMal Claimants whom the Debtors seek to bar here are not seeking any recovery under the Plan or from the Debtors or from the MedMal Trusts. They are seeking recovery from doctors and nurses and perhaps others who are third parties, and their claims are not barred by anything in the Plan or the Confirmation Order.

Debtors' argument that "holders of Non-Timely Prepetition MedMal Claims are permanently enjoined by the Plan Injunction and the Stay from asserting such claims against Covered Persons" (Motion at paragraph 10, page 6) is confounded by Section 11.6(d) of the Plan, which expressly contemplates that **any** holder of a MedMal Claim may be entitled to sue a Covered Person, in which case the Covered Person may seek indemnification from the Debtors which may be paid to the Covered Person out of the MedMal Trusts. Section 11.6(d) states:

> (d) If, notwithstanding the injunction contained in Section 11.6, any holder of a MedMal Claim shall assert such claim against a Covered Person, the injunction shall not preclude such Covered Person from asserting his or her right to indemnification against SVCMC (nor shall SVCMC be prevented from asserting all defenses, if any, to such asserted right to indemnification). Any indemnification amount owed to a Covered

>      Person by SVCMC on account of a MedMal Claim shall be paid from the appropriate
>      MedMal Trust; however, nothing in this Section 11.6(d) shall be deemed to supersede an
>      obligation, if any, of SVCMC to provide legal representation for a Covered Person in the
>      defense of a MedMal Claim.

The Debtors expressly concede that:

>      The effect of Section 11.6(d) is to continue the rights of Covered Persons to seek
>      indemnification against or from SVCMC for prepetition medical malpractice claims,
>      regardless of whether such claims are Non-Timely Prepetition MedMal Claims.

(Motion, paragraph 9 at page 6)  Recognizing that Section 11.6(d) and their concession quoted just above undermine their attempt to bar medical malpractice claims against Covered Persons, the Debtors argue in the next sentence:

>      The Plan provides Covered Persons with this protection because the underlying claim
>      itself, the MedMal Claim against the Covered Person, can only be allowed if a proof of
>      claim for such MedMal Claim was timely filed . . . in the Bankruptcy Cases;
>      Section 11.6(d) therefore acts as a backstop should the Plan Injunction and Stay not
>      properly be extended to a Covered Person.

(*Id.*)  The defect in this statement is that there is nothing in the Plan or the Confirmation Order or in any order of this Court that provides that a MedMal Claim against a Covered Person "can only be allowed if a proof of claim for such MedMal Claim was timely filed . . . in the Bankruptcy Cases."  Claims against non-debtor third parties **cannot** be filed in the bankruptcy court.  The only syllogism or rationale proffered by Debtors in support of this proposition appears at the end of paragraph 6 on page 5 of the Motion, as follows:

>      Because, as described below, pursuant to Section 11.6(d) of the Plan, a claim against a
>      Covered Person is the equivalent of a claim against the Debtors for the purposes of deter-
>      mining the liability of the MedMal Trusts for such claim, this prohibition **[**referring to the
>      prohibition in Section 11.6(a) of the Plan and paragraph 39 of the Confirmation Order**]**
>      extends to claims against Covered Persons.

The defect in this contention is that nothing in the Plan or the Confirmation Order or any other order of this Court extends the prohibition in Section 11.6(a) of the Plan to claims against Covered Persons.  A medical malpractice claim against a Covered Person is **not** "the equivalent of a claim against the Debtors" — it is a claim against the Covered Person and nothing more.  The fact that the Covered Person may have a right of indemnification against the Debtors under Section 11.6(d) and that the indemnification claim

- 8 -

may be paid out of the MedMal Trusts does not convert the injured person's medical malpractice claim against the Covered Person into a claim against the Debtors or the MedMal Trusts for Bar Date purposes or any other purpose. The Debtors' argument is simply a fabrication of counsel which cannot be supported by any document in these Bankruptcy Cases and which, if sustained, would deprive injured parties of their right to sue non-debtor third parties without due process.

Finally, with respect to the Debtors' fundamental assertion in this Motion that "claimants were permanently enjoined from pursuing any Non-Timely Prepetition MedMal Claims or asserting such claims against . . . Covered Persons," it bears repeating that the very concept of a "Non-Timely Prepetition MedMal Claim against a Covered Person" is simply nonsensical. There is no such thing as a "Non-Timely Prepetition MedMal Claim against a Covered Person" because there is no bar order and no time limitation with respect to such claims imposed by the Bankruptcy Code, the Plan, the Confirmation Order or any other order of this Court.[5] The phrase "Non-Timely Prepetition MedMal Claim" is defined at page 2 of the Motion as "prepetition medical malpractice claims" as to which the holders of the claims "failed to timely file proofs of claim (or to have late proofs of claim deemed timely filed by this Court) with respect to such claims in the Bankruptcy Cases." That definition is fitting for untimely filed claims **against the Debtors**. But it is nothing short of disingenuous to assert (especially in state courts not familiar with bankruptcy or the Debtors' lengthy and complex Plan and Confirmation Order) that the phrase has application to claims against third parties like physicians or nurses which cannot be filed in these Debtors' Bankruptcy Cases, cannot be adjudicated in the Bankruptcy Court, are not subject to any bar order and are not untimely in any bankruptcy context.[6]

---

[5] State statutes of limitations are not at issue on this Motion.

[6] I recognize that medical malpractice claims against non-debtor third parties may result in indemnification claims against the Debtors and the MedMal Trusts by those third parties who are Covered Persons, and that such claims may not have been considered in calculating the quantum of assets necessary to fund the MedMal Trusts. But that lacuna is not justification for the Court to sustain a baseless "construction" of the governing documents so as to deprive third parties of their rights without due process.

**<u>Conclusion</u>**

Because there is no basis to "enforce" either the injunction provisions of the Plan and Confirmation Order or the automatic stay so as to bar medical malpractice claims against doctors, nurses or other professionals of the Debtors, whether they are deemed Covered Persons or not, there is no need to establish procedures to determine Covered Person status with respect to such defendants. Accordingly, the Motion is DENIED.

Because it appears from the Motion that Debtors' arguments herein have been asserted in state or federal court proceedings in an effort to bar claims against Covered Persons, the Order resolving this Motion will require Debtors' counsel to provide this Decision to counsel for the litigants and to the courts in all such state or federal court proceedings, past or future, whether or not interim or final judgments have been rendered in such proceedings, for such consideration as the respective state or federal courts may deem appropriate.

Dated: White Plains, NY
December 4, 2008

                                              /s/ Adlai S. Hardin, Jr.
                                                    U.S.B.J.

**Appendix**

11. <u>Disputed Claims</u>.  In accordance with First Amended Plan Sections 7.1, 7.3, 7.4, 7.5, and 7.6, and notwithstanding any other provision in the First Amended Plan, if any portion of a Claim is a Disputed Claim, no payment or distribution provided under the First Amended Plan shall be made on account of such Claim unless and until and only to the extent such Disputed Claim becomes an Allowed Claim.  If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, Reorganized SVCMC, the applicable MedMal Trustee, or the Litigation Trustee shall, as soon as practicable following the date on which the Disputed Claim becomes an Allowed Claim, except as otherwise provided in the First Amended Plan, distribute to the holder of such Allowed Claim an amount, without any interest thereon (other than MedMal Interest if, and to the extent, due), that provides such holder with the same percentage recovery, as of such date, as holders of Claims in the class that were Allowed on the Effective Date.  To the extent that a Disputed Claim is expunged or reduced, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed.  Any Disputed Claim, for which a proof of claim has not been deemed timely filed as of the Effective Date, shall be disallowed.

39. <u>Injunction</u>.  Pursuant to First Amended Plan Section 11.6(a), and subject to Section 11.6(c) of the First Amended Plan, all Persons or entities who have held, hold, or may hold Claims against or Equity Interests in any or all of the Debtors or other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, are <u>permanently enjoined</u>, on and after the Effective Date, with respect to all Claims against and Equity Interests in the Debtors from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbital, administrative or other forum) against or affecting the Debtors, the Post-Effective Date Debtors, the Released Parties, or their property, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Post-Effective Date Debtors, the Released Parties, or their property, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Post-Effective Date Debtors, the Released Parties, or against the property or interests in property of the foregoing, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Debtors, the Post-Effective Date Debtors, the Released Parties, or any of their property, except as contemplated or allowed by the First Amended Plan, the Bankruptcy Code, or applicable law, (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the First Amended Plan, (vi) commencing, continuing or asserting in any manner any action or other proceeding of any kind with respect to any Claims and causes of action which are extinguished or released pursuant to the First Amended Plan, and (vii) taking any actions to interfere with the implementation and consummation of the First Amended Plan.

41. The automatic stay imposed by section 362 of the Bankruptcy Code and the injunctions set forth in First Amended Plan Sections 11.6(a) and (b) and paragraphs 35 and 36 of this Confirmation Order shall not apply after the Effective Date to acts by holders of timely filed Claims alleging medical malpractice to seek payment from the Debtors' insurance companies for or to liquidate the amount of such Claims against the Debtors or a Covered Person in a court or administrative body of appropriate jurisdiction, except to the extent that it is determined by a Final Order either that such Claim was not timely filed or that the Claim shall not be Allowed.  Notwithstanding the foregoing sentence, holders of MedMal Claims may only be paid on account of their MedMal Claims as provided for, and from assets specifically designated for payment of such MedMal Claims, under the First Amended Plan.  Nothing in the First Amended Plan shall limit, modify or otherwise impair the rights of holders of timely filed Claims alleged to be for medical malpractice to seek payment for such Claims from the Debtors' insurance policies and proceeds thereof and/or from insurance policies and the proceeds thereof for the benefit of a Covered Person which cover such claims, it being the intent of the First Amended Plan to leave such timely filed Claims alleged to be for medical malpractice unimpaired except to the extent such Claims are MedMal Claims as defined by the First Amended Plan.