COOLEY GODWARD KRONISH LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: 212.479.6000
Facsimile: 212.479.6275
Richard S. Kanowitz
Ronald R. Sussman
Seth Van Aalten

Attorneys for MedMal Trust Monitor

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
In re:

SAINT VINCENTS CATHOLIC MEDICAL
CENTERS OF NEW YORK d/b/a SAINT VINCENT
CATHOLIC MEDICAL CENTERS, *et al.*,

                Debtors.

------------------------------------------------------------------ x
MICHAEL E. KATZENSTEIN, in his capacity as the
MedMal Trust Monitor,

                Plaintiff,

        v.

SAINT VINCENTS CATHOLIC MEDICAL
CENTERS OF NEW YORK d/b/a SAINT VINCENT
CATHOLIC MEDICAL CENTERS and
CHRISTIANA BANK & TRUST COMPANY, as
trustee of the MedMal-MW Trust, the MedMal-SI
Trust and the MedMal-BQ Trust,

                Defendants.

------------------------------------------------------------------ x

Chapter 11

Case No.: 05-14945 (CGM)

(Jointly Administered)

Adv. Pro. No. 10-_____ (CGM)

## **COMPLAINT**

Michael E. Katzenstein ("Plaintiff" or the "MedMal Trust Monitor"), in his capacity as

the MedMal Trust Monitor of the MedMal-MW Trust, the MedMal-SI Trust and the MedMal-BQ Trust (collectively, the "MedMal Trusts") for his complaint against defendants Saint Vincents Catholic Medical Centers of New York d/b/a Saint Vincent Catholic Medical Centers ("SVCMC") and Christiana Bank & Trust Company, as trustee for the MedMal Trusts (the "MedMal Trustee" and together with SVCMC, the "Defendants"), respectfully alleges as follows:

## SUMMARY OF ACTION

1. This is an adversary proceeding seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105 and Fed R. Bankr. P. 7001(7), 7001(9) and 7065. Plaintiff respectfully requests a judicial determination of whether the MedMal Trustee is legally obligated under the MedMal Trust Agreements[1] and the circumstances described herein to (i) distribute Cash to holders of Allowed MedMal Claims from the MedMal Trust Assets to satisfy such Allowed MedMal Claims in accordance with Article V of the MedMal Trust Agreements or, alternatively, (ii) cease making any distributions to holders of Allowed MedMal Claims pending further order of the Court. The basis for this complaint is SVCMC's well publicized liquidity crisis, the anticipated shortfall of MedMal Trust Assets to satisfy Allowed MedMal Claims and the anticipated inability of the MedMal Trusts to satisfy with MedMal Trust Assets other MedMal Claims that are either presently unliquidated or liquidated but subject to future allowance. If the Court determines that the MedMal Trustee is legally obligated to cease making any distributions to holders of Allowed MedMal Claims, then Plaintiff requests that the Court enjoin SVCMC from directing and the MedMal Trustee from making any distribution to

---

[1] Terms not defined in this complaint have the meaning ascribed to them in the MedMed Trust Agreements. A copy of the MedMal-BQ Trust in annexed hereto as Exhibit A. Each of the three MedMal Trust Agreements contain identical provisions which are the subject of this adversary proceeding.

holders of Allowed MedMal Claims from the MedMal Trust Assets pending further order of the Court.

2. Injunctive relief is requested because on March 1, 2010, a distribution of $1.5 million is due to be made from one of the MedMal Trusts on account of an Allowed MedMal Claim. Shortly thereafter, additional distributions totaling approximately $4 million are due to be made on account of 15 other Allowed MedMal Claims. Additionally, two MedMal Claims have been liquidated through judgments obtained against SVCMC in the aggregate amount of $12 million. These judgments are subject to appeal by SVCMC and therefore these claims have not yet been Allowed. As of February 12, 2010, the estimated market value of the aggregate balance of the MedMal Trust Assets was approximately $14.9 million. Based on the current circumstances, it is anticipated that the MedMal Trust Assets will be insufficient to satisfy the remaining 300 or so timely-filed MedMal Claims which are subject to liquidation and allowance in the future.

3. In view of SVCMC's current liquidity crisis and stated inability to satisfy its outstanding – and potentially future – contribution obligations to the MedMal Trusts, as well as the financial realities facing the MedMal Trusts as discussed above, the MedMal Trust Monitor has filed this Complaint so as to avoid subjecting SVCMC, the MedMal Trustee, the MedMal Monitor and the MedMal Trusts to liability based solely on an unintentional violation of the provisions of the Plan, Confirmation Order and MedMal Trust Agreements and to avoid potentially disparate treatment of the MedMal Trusts' beneficiaries.

**PARTIES**

4. Plaintiff is the MedMal Trust Monitor appointed pursuant to section 6.6(g) of the Chapter 11 Plan and Article VIII of the MedMal Trust Agreements.

5. Defendant SVCMC is one of the Post-Effective Date Debtors in the above-captioned chapter 11 cases under which this adversary proceeding arises or relates pursuant to 28 U.S.C. § 1334(b) and Fed. R. Bankr. P. 7008(a).

6. Defendant MedMal Trustee is appointed pursuant to section 6.6(e) of the Chapter 11 Plan and Articles VI and VII of the MedMal Trust Agreements.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) as it arises in and relates to the Chapter 11 Cases.

8. This Court also has jurisdiction pursuant to: (i) Article X of the chapter 11 Plan, which retains this Court's jurisdiction, *inter alia*, to hear and determine disputes arising in connection with the enforcement of the chapter 11 Plan and to issue such orders in aid of implementation of the chapter 11 Plan; (ii) Section 6.6(w) of the chapter 11 Plan and section 4.10 of the MedMal Trust Agreements, which provide that in the event of an alleged default by SVCMC with respect to any of its obligations under the chapter 11 Plan related to the treatment of Allowed MedMal Claims, any and all litigation arising out of relating to such alleged default shall be brought by the MedMal Trust Monitor before this Court; and (iii) the well-settled case law in this District conferring post-confirmation jurisdiction as to fundamental questions of interpretation and administration of a chapter 11 plan. *See In re Johns-Manville Corp.*, 91 B.R. 225, 228 (Bankr. S.D.N.Y. 1988).

9. This proceeding is a "core proceeding" under 28 U.S.C. § 157(b).

10. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11. An actual case or controversy has arisen and now exists.

## BACKGROUND AND GENERAL ALLEGATIONS

**A.     Chapter 11 Plan and Confirmation**

12. On July 5, 2005, SVCMC, CMC Physician Services, P.C., CMC Radiological Services P.C., CMC Cardiology Services P.C., Medical Service of St. Vincent's Hospital and Medical Center, P.C. and Surgical Service of St. Vincent's, P.C. (collectively, the "<u>Debtors</u>" and, as reorganized or liquidated, as applicable, the "<u>Post-Effective Date Debtors</u>") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York (the "<u>Chapter 11 Cases</u>').

13. On February 9, 2007, the Debtors filed that (i) *Chapter 11 Plan of Reorganization of Saint Vincents Catholic Medical Centers of New York d/b/a Saint Vincent Catholic Medical Centers, and Chapter 11 Plans of Liquidation of Medical Service of St. Vincent's Hospital and Medical Center, P.C., Surgical Service of St. Vincent's, P.C., CMC Cardiology Services P.C., CMC Physician Services P.C., and CMC Radiological Services P.C.* (Doc #2756) (as amended on June 1, 2007 (Doc #3180) and June 5, 2007 (Doc #3207), the "<u>Plan</u>") and (ii) *Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for Chapter 11 Plan of Reorganization of Saint Vincents Catholic Medical Centers of New York d/b/a Saint Vincent Catholic Medical Centers, and Chapter 11 Plans of Liquidation of Medical Service of St. Vincent's Hospital and Medical Center, P.C., Surgical Service of St. Vincent's, P.C., CMC Cardiology Services P.C., CMC Physician Services P.C., and CMC Radiological Services P.C.* (Doc #2757) (as amended on June 1, 2007 (Doc #3179) and June 5, 2007 (Doc #3206), the "<u>Disclosure Statement</u>").

14. On June 4, 2007, the Court held a hearing at which, subject to minor additional modifications as reported at that hearing, it approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code. Subsequently, on June 5, 2007, the Court entered an order, *inter alia*, (i) approving the Disclosure Statement, (ii) establishing July 18, 2007 as the deadline for voting on the Plan, (iii) scheduling a hearing to

1612963 v7/NY
02/24/10

5

consider confirmation of the Plan for July 27, 2007, and (iv) approving the form of support letters for the Plan from each of the Official Committees urging their respective constituents to vote in favor of the Plan (Doc #3205).

15. On July 27, 2007, the Court issued its *Findings of Fact and Conclusions of Law in connection with the Chapter 11 Plan* (Doc #3489) and entered that *Order Confirming Debtors' First Amended Chapter 11 Plans of Reorganization and Liquidation* (Doc #3490) (the "Confirmation Order"), representing the culmination of protracted, good-faith, arms'-length negotiations among the Debtors, the creditors' committee, the tort committee and certain individual creditors with respect to the terms of a consensual reorganization or liquidation, as applicable, of the Debtors' estates. Approximately 94% of those holders of claims alleged to be for medical malpractice which voted, voted in favor of the Plan.

16. The Plan became effective according to its terms on August 30, 2007 (the "Effective Date"). *See Notice of Occurrence of Effective Date of Debtors' First Amended Plans of Reorganization and Liquidation*, dated September 4, 2007 (Doc. No. 3638).

B. **Treatment of MedMal Claims Under the Plan**

17. Prepetition medical malpractice claims against SVCMC are divided into three separate classes under the Plan (collectively, the "MedMal Claims"): (i) "MedMal-BQ Claims" (Class 4), which are MedMal Claims relating to an incident that allegedly occurred at one of the Brooklyn/Queens Hospitals, (ii) "MedMal-MW Claims" (Class 5), which are MedMal Claims relating to an incident that allegedly occurred at the Manhattan Hospital or the Westchester Hospital, and (iii) "MedMal-SI Claims" (Class 6), which are MedMal Claims relating to an incident that allegedly occurred at one of the Staten Island Hospitals or certain related facilities.

18. A separate MedMal Trust was established under the Plan with respect to each of these three classes of MedMal Claims (collectively, the "MedMal Trusts"). The MedMal Trusts

were specifically established under the Plan and Confirmation Order for the purposes of facilitating the implementation of the Plan and in particular, holding the MedMal Trust Assets and distributing such assets only to holders of Allowed MedMal Claims. The MedMal Trust Assets are not property of SVCMC or its post-Effective Date estate.

19. Holders of timely filed MedMal Claims are currently liquidating their claims in state court and once such claims are liquidated by final trial verdict or settlement, and thus allowed, the claimants seek satisfaction of those allowed claims from the proceeds of applicable insurance policies and/or the applicable MedMal Trust to the extent there are no insurance proceeds available.

20. Section 6.6(g) of the Plan provides for the appointment of the MedMal Trust Monitor to, among other things, monitor the assets of the MedMal Trusts, provide reports on creditor distributions made from those assets, respond to creditor inquiries concerning such assets and distributions and, to the extent necessary, enforce the liens granted to the MedMal Trusts to secure SVCMC's payment obligations under the Plan.

21. Michael E. Katzenstein was appointed as MedMal Trust Monitor for each of the MedMal Trusts pursuant to (i) the SVCMC MedMal-BQ Trust Agreement, (ii) the SVCMC MedMal-MW Trust Agreement, and (iii) the SVCMC MedMal-SI Trust Agreement (collectively, the "<u>MedMal Trust Agreements</u>")[2] and is currently serving in that capacity.

22. Section 6.6(e) of the Plan provides for the appointment of the MedMal Trustee to, among other things, hold, manage, sell or invest, as appropriate, the assets held in the MedMal Trusts for the benefit of holders of MedMal Claims. Christiana Bank & Trust Company was

---

[2] Except as to the separate classes of MedMal Claims to which they govern, the MedMal Trust Agreements are substantively identical. A copy of the MedMal-BQTrust Agreement is annexed hereto as **Exhibit A**.

appointed as MedMal Trustee for each of the MedMal Trusts pursuant to the MedMal Trust Agreements and is currently serving in that capacity.

23. Section 6.6(c) of the Plan addresses the initial funding of the MedMal Trusts by SVCMC, as well as SVCMC's post-Effective Date contribution obligations, including, without limitation, the obligation to make additional contributions to the MedMal Trusts in accordance with a fixed trust funding schedule (the "MedMal Trust Funding Schedule"). The MedMal Trust Funding Schedule requires funding in excess of $173 million to satisfy the estimated $77 million to $116 million in MedMal Claims.

C. **MedMal Trust Agreements**

24. As set forth in the MedMal Trust Agreements, the MedMal Trusts are established and intended to be treated as a "qualified settlement fund" within the meaning of Treasury Regulation section 1.468B-1 for the purpose of, *inter alia*, managing, selling and investing the MedMal Trust Assets and distributing such assets for the benefit of holders of Allowed MedMal Claims.

25. Section 2.4 of the MedMal Trust Agreements provides that the principal purpose of the MedMal Trust Agreements is to aid in the implementation of the Plan and the Confirmation Order, that the MedMal Trust Agreements incorporate by reference the provisions of the Plan and the Confirmation Order and, to that end, the MedMal Trustee has full power and authority to take any action consistent with the purpose and provisions of the Plan, and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and the MedMal Trust Agreements.

26. Section 2.4 of the MedMal Trust Agreements provides further that to the extent any provisions of the MedMal Trust Agreements are found to be inconsistent with the provisions of the Plan or the Confirmation Order, each such document shall have controlling effect in the

following rank order: (i) the Confirmation Order, (ii) the MedMal Trust Agreements and (iii) the Plan.

27. Section 8.2(a) of the MedMal Trust Agreements provides that the MedMal Trust Monitor shall (i) monitor the operations of the MedMal Trusts and contributions from SVCMC, (ii) enforce the payment obligations of SVCMC to the MedMal Trusts, (iii) enforce the MedMal Lien of the MedMal Trusts, (iv) oversee the refinancing or other disposition of the MedMal Collateral, (v) enforce the cap on MedMal Defense Costs to be paid by the MedMal Trusts and (vi) perform other duties as set forth in the Plan, the MedMal Trust Agreements, the Plan Supplement or any other related documents.

28. Section 5.1 of the MedMal Trust Agreements provides that all distributions made by the MedMal Trustee to holders of allowed MedMal Claims shall be made at the direction of SVCMC and in accordance with the Plan and provisions of the MedMal Trust Agreements.

29. Section 5.1(a) of the MedMal Trust Agreements provides that each holder of an Allowed MedMal Claim shall receive in full and complete satisfaction, settlement and release of and in exchange for its allowed MedMal Claim, except to the extent such holder agrees to less favorable treatment, (i) (A) if such MedMal Claim is allowed on the Effective Date, as soon as practicable after the Effective Date, or (B) if such MedMal Claim is not Allowed on the Effective Date, as soon as practicable after the date such MedMal Claim becomes Allowed, Cash up to the amount of its Allowed MedMal Claim to the extent there remains Distributable Cash in the respective MedMal Trust on such date, such Cash to be distributed to all Allowed MedMal Claims in proportion to the unpaid portion of each Allowed MedMal Claim (including accrued MedMal Interest, if any) and (ii) within 30 days after each date that the respective MedMal Trust receives a payment from SVCMC, the Litigation Trust or the respective MedMal Trust Policy, to the extent that there is Distributable Cash based on the amount of the unpaid

portion of its Allowed MedMal Claim (including accrued MedMal Interest, if any) relative to the unpaid portions of all other Allowed MedMal Claims (including accrued MedMal Interest, if any) existing on that date, until such holder receives the full Allowed amount of its MedMal Claim (including accrued MedMal Interest, if any).

30. Section 5.1(c) of the MedMal Trust Agreements provides, with respect to the timing of distributions from the MedMal Trusts, that unless otherwise provided in the MedMal Agreements, any distribution to be made by the MedMal Trustee shall be made to the extent and at the time provided in section 5.1(a) of the MedMal Trust Agreements and in the Plan.

31. Section 5.3 of the MedMal Trust Agreements provides that to the extent and only to the extent a holder of an Allowed MedMal Claim is not paid in full within thirty (30) days of its MedMal Claim becoming an Allowed Claim, then such holder shall be entitled to receive "MedMal Interest" on the unpaid portion of its Allowed MedMal Claim form the date the MedMal Claim is Allowed until the full principal amount of the Allowed MedMal Claim is paid.

32. MedMal Interest is defined in the Plan and the MedMal Trust Agreements to accrue at the judgment rate prevailing in New York State on the Effective Date.

33. Section 6.1 of the MedMal Trust Agreements obligates the MedMal Trustee to act in accordance with the instructions of SVCMC with respect to the MedMal Trustee's management and distribution of the MedMal Trust Assets.

34. Section 6.1 of the MedMal Trust Agreements provides that the MedMal Trustee shall be responsible for all decisions and duties with respect to the MedMal Trusts and the MedMal Trust Assets.

35. Section 6.1 of the MedMal Trust Agreements provides that, in all circumstances, the MedMal Trustee shall act in the best interests of all beneficiaries of the MedMal Trusts and in furtherance of the MedMal Trusts' purpose.

36. Section 6.5(a) of the MedMal Trust Agreements provides that the MedMal Trustee may, with the written consent of SVCMC, control and exercise authority over the MedMal Trust Assets, over the acquisition, management and disposition thereof and over the management and conduct of the MedMal Trusts, in each case, to the extent necessary to enable the MedMal Trustee to fulfill the intents and purposes of the MedMal Trust Agreements.

37. Section 6.5(b) of the MedMal Trust Agreements provides that in connection with the MedMal Trustee's management of the MedMal Trust Assets, the MedMal Trustee shall have the power to take any and all actions as in the MedMal Trustee's discretion, subject to the written consent of SVCMC, as are necessary or advisable to effectuate the primary purposes of the MedMal Trusts, including, without limitation, the power and authority to distribute the MedMal Trust Assets to beneficiaries in accordance with the terms of the MedMal Trust Agreements and the Plan.

38. Section 6.7(n) of the MedMal Trust Agreements provides that, in addition to all other powers enumerated in the MedMal Trust Agreements, the MedMal Trustee shall, in consultation with and at the direction of SVCMC and subject to the retained jurisdiction of the Bankruptcy Court as provided in the Plan, be empowered to exercise such powers as may be vested in the MedMal Trustee pursuant to an order of the Bankruptcy Court or the MedMal Trust Agreements, or as deemed by SVCMC to be necessary and proper to carry out the obligations of the MedMal Trusts.

39. Section 5.5(a) of the MedMal Trust Agreements provides that when all Disputed MedMal Claims have been resolved and all Allowed MedMal Claims have been paid in full, (A) SVCMC's obligations to make additional payments to the MedMal Trusts shall cease and (B) the MedMal Trustee shall make a final distribution of all remaining assets in the MedMal Trusts as

described in Section 5.5(b). Section 5.5(b) governs the making of final distributions by the MedMal Trustee.

40. Section 9.2 of the MedMal Trust Agreements obligates the MedMal Trusts, to the extent of their assets legally available for that purpose, to indemnify and hold harmless the MedMal Trustee, the MedMal Trust Monitor and SVCMC and each of their respective directors, members, shareholders, partners, officers, agents or employees (collectively, the "Indemnified Persons") from any and all loss, cost, damage, expense (including, without limitation, fees and expenses of attorneys and other advisors and any court costs incurred) or liability by reason of anything any such Indemnified Person did, does or refrains from doing for the business or affairs of the MedMal Trusts, except to the extent that it is finally judicially determined by a court of competent jurisdiction that the loss, cost, damage, expense or liability resulted primarily from the Indemnified Person's gross negligence, willful misconduct, breach of fiduciary duty or knowing violation of law. To the extent reasonable, the MedMal Trusts will pay in advance or reimburse reasonable expenses (including advancing reasonable costs of defense) incurred by the Indemnified Person who is or is threatened to be named or made a defendant or a respondent in a proceeding concerning the business and affairs of the MedMal Trusts.

D. **SVCMC's Plan Default and Impact on MedMal Trusts**

41. SVCMC is obligated under the MedMal Trust Funding Schedule to contribute to the MedMal Trusts funds in certain fixed amounts on the Effective Date Anniversary for nine (9) consecutive years following the Effective Date.

42. SVCMC was obligated under the MedMal Trust Funding Schedule to contribute $10 million to the MedMal Trusts by August 30, 2009 – the second anniversary of the Effective Date of the Plan. No such payment has been made by SVCMC.

43. SVCMC purports to be undergoing a liquidity crisis impacting its current business operations that has resulted in SVCMC's failure to meet its outstanding contribution obligations to the MedMal Trusts. There exists a reasonable likelihood that SVCMC will not meet its future contribution obligations to the MedMal Trusts.

44. According to information provided to the MedMal Trust Monitor by SVCMC, as of February 12, 2010, approximately 551 MedMal Claims were timely filed against SVCMC, of which approximately 238 MedMal Claims have been either allowed or disallowed and approximately 313 MedMal Claims remain unliquidated or liquidated subject to allowance.

45. According to information provided to the MedMal Trust Monitor by SVCMC, effective March 1, 2010, a distribution of $1.5 million will be owed on account of an Allowed MedMal Claim. Shortly thereafter, distributions totaling approximately $4 million will be owed on account of 15 other Allowed MedMal Claims. Additionally, two MedMal Claims have been liquidated through judgments obtained against SVCMC in the aggregate amount of $12 million. These judgments are subject to appeal by SVCMC and therefore these claims have not yet been allowed.

46. According to information provided to the MedMal Trust Monitor by the MedMal Trustee, as of February 17, 2010, the estimated market value of the aggregate balance of the MedMal Trust Assets was approximately $14.9 million.

47. There is an anticipated shortfall of MedMal Trust Assets to satisfy Allowed MedMal Claims.

48. There are approximately 300 or so MedMal Claims which are either presently unliquidated or liquidated but subject to future allowance. There is an anticipated inability of the MedMal Trusts to satisfy such MedMal Claims with MedMal Trust Assets.

## FIRST CAUSE OF ACTION
### (Declaratory Relief)

49. Plaintiff repeats, realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs.

50. Plaintiff requests a judicial determination, pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105 and Fed. R. Bankr. P. 7001(9), of whether the MedMal Trustee is legally obligated under the MedMal Trust Agreements and the circumstances described herein to (i) distribute Cash to holders of Allowed MedMal Claims from the MedMal Trust Assets to satisfy such Allowed MedMal Claims in accordance with Article V of the MedMal Trust Agreements or, alternatively, (ii) cease making any distributions to holders of Allowed MedMal Claims pending further order of the Court.

51. An actual case or controversy has arisen and now exists between Plaintiff and Defendants relating to their legal rights, duties and obligations under the Plan, the Confirmation Order and the MedMal Trust Agreements.

## SECOND CAUSE OF ACTION
### (Injunctive Relief)

52. Plaintiff repeats, realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs.

53. If the Court determines that the MedMal Trustee is legally obligated to cease making any distributions to holders of Allowed MedMal Claims, then Plaintiff requests, pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 7001(7) and 7065, that the Court enjoin SVCMC from directing and the MedMal Trustee from making any distribution to holders of Allowed MedMal Claims from the MedMal Trust Assets pending further order of the Court.

54. Sufficiently serious questions of liability are raised with respect to the distribution of MedMal Trust Assets to holders of Allowed MedMal Claims at this time. The requested

injunctive relief is necessary to balance the hardships because subjecting SVCMC, the MedMal Trustee, the MedMal Monitor and the MedMal Trusts to liability based solely on an unintentional violation of the provisions of the Plan, Confirmation Order and MedMal Trust Agreements is inequitable.

WHEREFORE, Plaintiff respectfully requests that that this Court enter an appropriate order and judgment (a) determining, pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105 and Fed. R. Bankr. P. 7001(9), whether the MedMal Trustee is legally obligated under the MedMal Trust Agreements and the circumstances described in the Complaint to (i) distribute Cash to holders of Allowed MedMal Claims from the MedMal Trust Assets to satisfy such Allowed MedMal Claims in accordance with Article V of the MedMal Trust Agreements or, alternatively, (ii) cease making any distributions to holders of Allowed MedMal Claims pending further order of the Court; and (b) if the Court determines that the MedMal Trustee is legally obligated to cease making any distributions to holders of Allowed MedMal Claims, then, pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 7001(7) and 7065, enjoining SVCMC from directing and the MedMal Trustee from making any distribution to holders of Allowed MedMal Claims from the MedMal Trust Assets pending further order of the Court, together with such other and further relief as the Court deems just and proper.

Dated: February 25, 2010
New York, New York

COOLEY GODWARD KRONISH LLP

By: /s/ Richard S. Kanowitz
Richard S. Kanowitz
Ronald R. Sussman
Seth Van Aalten

Counsel for the MedMal Trust Monitor